UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| CARLTON TREMELL TURNER | CIVIL ACTION NO. 14-cv-0625 |
| VERSUS | JUDGE WALTER |
| JAKE BAIRD, ET AL | MAGISTRATE JUDGE HORNSBY |

## REPORT AND RECOMMENDATION

**Introduction**

Carlton Turner ("Plaintiff") is an inmate housed at the David Wade Correctional Center. He alleges that Major Jake Baird and Captain Vincent Coleman violated his civil rights by (1) refusing to allow a monthly telephone call, (2) the unnecessary application of a chemical agent, and (3) filing a false disciplinary report. Baird and Coleman have filed a Motion for Summary Judgment (Doc. 25) that challenges the claims on the merits. For the reasons that follow, it is recommended that their motion be granted.

**Summary Judgment**

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Pro. 56(a). A fact is "material" if it might affect the outcome of the suit under governing law. Anderson v. Liberty Lobby, Inc., 106 S.Ct. 2505, 2510 (1986). A dispute is "genuine" if there is sufficient evidence so that a reasonable jury could return a verdict for

either party. Anderson, supra; Hamilton v. Segue Software Inc., 232 F.3d 473, 477 (5th Cir. 2000).

The party seeking summary judgment has the initial responsibility of informing the court of the basis for its motion, and identifying those parts of the record that it believes demonstrate the absence of a genuine dispute of material fact. Celotex Corp. v. Catrett, 106 S.Ct. 2548 (1986). If the moving party carries his initial burden, the burden then falls upon the nonmoving party to demonstrate the existence of a genuine dispute of a material fact. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 106 S.Ct. 1348, 1355-56 (1986).

**Relevant Facts**

    **A. Plaintiff's Allegations**

Plaintiff was housed in the N-1 housing unit on extended lockdown. He alleges that, on the evening at issue, officers were taking inmates on his tier from their cells and to a telephone area so the inmates could place a monthly phone call. Plaintiff was restrained in preparation for being escorted to make his call when Major Baird passed by and told the other officers that Plaintiff "can't use the phone on my shift." Plaintiff alleges that he expressed his urgent need to contact family members to whom he had not spoken in some months, but Baird allegedly told Plaintiff that he did not care. Baird then allegedly said that Plaintiff was going to "get gassed."

Plaintiff alleges that two other officers, including Captain Coleman, approached his cell. Coleman allegedly ordered Plaintiff to come to the bars and, as Plaintiff did so,

Coleman sprayed Plaintiff with chemical agent to the face. Plaintiff alleges that Coleman sprayed Plaintiff a second time a few seconds later, as Baird looked on gleefully.

Plaintiff alleges that he was then escorted to the lobby, where he lost consciousness for a moment. He alleges that he came to just in time to see Captain Coleman standing over him and spraying him for a third time. Plaintiff alleges that he was in full restraints and in a passive position during this third spraying. He had to wait half an hour before he was given a shower, but his body continued to burn afterward. Plaintiff complains that he was also subjected to a falsified and fabricated disciplinary charge based on the events.

### B. Defendants' Evidence

Defendants challenge the allegations in Plaintiff's complaint with their sworn affidavits. Major Baird testifies that he had assigned an additional officer to the housing unit to assist with conducting telephone calls. Some of the inmates on N-1 B tier, where Plaintiff was housed, had made phone calls when Baird instructed the tier officers to stop running phones in N-1 at that time and proceed to the N-2 unit and allow some inmates in that housing area to make calls. Plaintiff, who apparently would have been the next N-1 prisoner to make a call if the original schedule had continued, "became belligerent, shouting and creating a disturbance." Baird testifies that he gave Plaintiff orders to stop shouting and to put his hands through his cell's tray hatch for the removal of restraints. Plaintiff did not comply and, instead, began to shout even louder.

Baird testifies that he had to leave the area to take a phone call, but he used his radio to summon Captain Coleman to the area. Baird testifies that he told Coleman to go to

Plaintiff's cell and remove the restraints from him, as phone calls had ceased running in the housing unit at that time.

Captain Coleman testifies in his affidavit that he then went to Plaintiff's cell and gave Plaintiff "several direct verbal orders to come to the bars and have the restraints removed, but [Plaintiff] flatly refused." Plaintiff continued to shout and create a disturbance, as well as hit the cell door with his hands. Coleman testifies that he then gave Plaintiff "verbal direct orders to be quiet and stop yelling, or that a chemical agent would be used." Plaintiff refused to comply, so Coleman "administered a short burst of chemical agent to the facial area."

Captain Coleman testifies that after the chemical agent took effect, he gave Plaintiff another order to put his hands through the tray hatch to allow removal of Plaintiff's waist chain. Plaintiff complied. Plaintiff was then placed in full restraints and escorted to the lobby by Coleman and Sgt. Douglas Falcon. Nursing staff was called to the area, and Plaintiff was treated. Plaintiff was offered a shower, and he accepted. He was then housed in the N-4 housing unit, D tier, with no further incident.

Coleman testifies that he applied only one short burst of chemical agent, which was done only after Plaintiff was causing a loud disturbance and refused several orders. Coleman specifically denies that Plaintiff ever lost consciousness or that Coleman used a chemical agent against Plaintiff after Plaintiff was removed from his cell. Coleman similarly denies that Plaintiff was refused a shower or that Coleman or any other officers willfully laughed or made jokes about Plaintiff. Sgt. Falcon offers an affidavit that corroborates the facts

testified to by Coleman. Baird and Coleman also testify that a rule violation report was issued to Plaintiff for aggravated disobedience, which was based on the facts set forth above.

**Analysis**

    **A. Excessive Force**

A convicted inmate's claim of excessive force is governed by the Eighth Amendment. The inmate must establish that the force was not applied in a good faith effort to maintain or restore discipline but was inflicted "maliciously and sadistically to cause harm." Hudson v. McMillian, 112 S.Ct. 995 (1992). This standard applies with equal force to claims that prison officials used a chemical agent on an inmate. Baldwin v. Stalder, 137 F.3d 836, 840-41 (5th Cir. 1998); Davis v. Cannon, 91 Fed. Appx. 327 (5th Cir. 2004).

The Baldwin decision observed that each decision is judged on its own facts, but there are several non-exclusive factors that should be considered in assessing whether unnecessary and wanton infliction of pain was used in violation of a prisoner's Eighth Amendment right to be free from cruel and unusual punishment. The listed factors were: (1) the extent of the injury suffered; (2) the need for the application of force; (3) the relationship between the need and the amount of force used; (4) the threat reasonably perceived by the responsible officials; and (5) any efforts made to temper the severity of a forceful response. Baldwin, 137 F.3d at 839.

Defendants shouldered their summary judgment burden by squarely contesting Plaintiff's allegations with their affidavit testimony. The burden then shifted to Plaintiff to come forward with competent summary judgment evidence that would create a genuine

dispute of material fact. Plaintiff filed a Memorandum in Opposition (Doc. 29), but it is merely an unsworn recitation of the facts set forth in his complaint, and it is not accompanied by affidavits. Unsworn memoranda are not competent summary judgment evidence. Larry v. White, 929 F.2d 206, 211 n. 12 (5th Cir. 1991).

A Plaintiff may also rely upon a verified complaint or facts sworn to under 28 U.S.C. § 1746, as those have been accepted as competent summary judgment evidence. Huckabay v. Moore, 142 F.3d 233, n. 6 (5th Cir. 1998); Hart v. Hairston, 343 F.3d 762 n. 1 (5th Cir. 2003). Section 1746 states that when a matter is required to be established or proved by the sworn declaration, verification, or affidavit of a person, such matter may, with like force and effect, be proved "by the unsworn declaration ... in writing of such person which is subscribed by him, as true under penalty of perjury, and dated, in substantially" the form set out in the statute. For statements made within the United States, that form is: "I declare (or certify, verify, or state) under penalty of perjury that the foregoing is true and correct. Executed on (date). (Signature)".

Page four of Plaintiff's complaint ends with a statement that, pursuant to 28 U.S.C. § 1746, he does "declare under penalty of perjury that all of the foregoing is both true and correct." The page then has blanks for the date and Plaintiff's signature, but Plaintiff did not complete any of those blanks or otherwise sign and date that page. The next page of the complaint sets forth the forms of relief demanded and discusses other matters, and it eventually does have Plaintiff's signature and the date. The critical signature and date are so distant from the declaration language on the prior page that, especially when the

intervening material is considered, it is almost certain that Plaintiff could not be successfully prosecuted for perjury if his certification were false. Under these circumstances, his complaint and its unsigned declaration are not competent summary judgment evidence. Plaintiff had more than ample opportunity to come forward with competent evidence, and he did not do so.

Given the lack of competing summary judgment evidence from Plaintiff, the testimony provided by the defense witnesses control for summary judgment purposes. That testimony depicts a use of force that was applied only after multiple orders that Plaintiff cease a disturbance, and the application of the chemical was followed quickly by attention from the nursing staff and a shower. There is no evidence Plaintiff suffered any injury or lasting harm beyond what is to be expected from the one-time exposure to the chemical agent. Those facts do not depict a use of force inflicted maliciously and sadistically to cause harm. Rather, they suggest a good-faith effort to maintain or restore discipline after Plaintiff refused the opportunity to avoid the application of the spray. Defendants are entitled to summary judgment on the excessive force claim.

**B. Telephone Call Denial**

Plaintiff and the other convicted prisoners in his housing area were apparently placed there for administrative or disciplinary reasons. They were not part of the general population. Plaintiff and the defendants suggest that prisoners in that unit were allowed to make one phone call per month. That limit may be why Plaintiff was so upset when he perhaps believed that he was not going to get his phone call, at least on that night.

Major Baird testifies that offenders in Plaintiff's housing unit who were eligible to use the phone, but did not get an opportunity to do so that night, would have been allowed to use the phone on another day and time. Baird was apparently attempting to allow inmates from different housing units the opportunity to make calls, which likely avoided complaints of unfairness from those housed in the other units. In any event, Plaintiff has not pointed to any law that would have mandated Baird allow him to use the phone on that particular evening.[1] Defendants are entitled to summary judgment on this claim.

**C. False Disciplinary Report**

Plaintiff alleges the disciplinary report against him was false. The undisputed facts testified to by the defense witnesses fully support the charge of aggravated disobedience that was filed against Plaintiff. There is no competent evidence to support the allegation that the charge was unwarranted. Furthermore, an allegation that a disciplinary charge was false does not state an actionable claim under 42 U.S.C. § 1983. Jackson v. Mizzel, 361 Fed. Appx 622, 626 (5th Cir. 2010); Williams v. Dretke, 306 Fed. Appx. 164, 166 (5th Cir. 2009). Defendants Baird and Coleman are entitled to summary judgment on this final claim.

Accordingly,

---

[1] "A prisoner in maximum security has no right to unlimited telephone use." Lopez v. Reyes, 692 F.2d 15, 17 (5th Cir. 1982). A prisoner's right to telephone access is subject to rational limitations in the face of legitimate security interests of the penal institution. Waganfeald v. Gusman, 674 F.3d 475, 485 (5th Cir. 2012). A loss of telephone privileges for weeks or even months is often imposed as a sentence for disciplinary violations, and it does not even trigger due process protection. Watkins v. Lnu, 547 Fed. Appx. 409, 410 (5th Cir. 2013) (three-month loss of commissary, visitation, and telephone privileges did not implicate a liberty interest).

**IT IS RECOMMENDED** that the **Motion for Summary Judgment (Doc. 25)** be **granted** and that all claims against Jake Baird and Vincent Coleman be **dismissed with prejudice**.

### Objections

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof. Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 31st day of August, 2016.



Mark L. Hornsby
U.S. Magistrate Judge